## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| AMA SYSTEMS, LLC <br> 8160 Lark Brown Road <br> Elkridge, Maryland 21075 <br><br>     Plaintiff, <br><br> v. <br><br> MARQUIS EXTRACTION TECHNOLOGY LLC <br> 11953 Prairie Industrial Parkway <br> Hennepin, Illinois 61327 <br><br> and <br><br> MARQUIS, INC. <br> 11953 Prairie Industrial Pkwy <br> Hennepin, Illinois 61327 <br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  CASE NO.:_____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff AMA Systems LLC ("AMA"), by its undersigned counsel, hereby for its Complaint against Defendants Marquis Extraction Technology LLC and Marquis, Inc. (collectively "Marquis") states as follows:

### **Introduction**

1. This case involves the purchase of large quantities of hand sanitizer that, when delivered, were unmarketable for the stated purposes, and worse, dangerous in the way they were packaged.  The purchaser, AMA, is one of the largest special market distributors in the USA, and it intended to resell the hand sanitizer to a number of its business-to-business customers, retailers and end users by tapping into contacts it had generated for itself over the more than the thirty years it has been in business- all of which was known by Marquis.

2.      The seller of the hand sanitizer was Marquis, which had decided that, with experience in the ethanol production business, it could manufacture and supply hand sanitizer in both liquid and gel form to meet the then-exploding market generated by the global COVID-19 pandemic.

3.      Though AMA attempted to resell Marquis's hand sanitizing liquid and gel, the market rejected Marquis' initial deliveries of the product because the smell was extremely unappealing, the viscosity of both the liquid and gel was too thin and watery, and bottle's shape (akin to a sport water bottle) for the liquid was particularly dangerous because it could cause confusion with purchasers.

4.      The parties agreed that the initial product was unsuitable for AMA's purposes, and the Marquis agreed to accept return of the product for full refund of at least the liquid supplied in the sports bottles.  Marquis's only request was that AMA return the bottles in two stages due to storage space concerns.  Pursuant to this agreement, AMA returned a bit more than half of the initial product.  Marquis further promised to accept physical return of the remainder of the initial product once storage space opened.

5.      Marquis, however, reneged on its promise in two respects.  Though it accepted return of the first shipment of liquid bottles, worth approximately $214,500, it has not returned any money to AMA.  And, it has refused to accept any of the additional unusable product.

6.      Marquis has acknowledged the debt, and it has given AMA an offset of about $30,000 on other product that AMA had purchased from Marquis.  Other than this credit, Marquis has paid nothing to AMA.

7.      Moreover, AMA has been unable to resell any of the Marquis initial product and has been forced to take the purchase as a complete loss.

8.　At the same time that Marquis was agreeing to accept return of the liquid in sports bottles, it was exploiting AMA's valuable connections in the marketplace and violating an oral agreement between the parties and a Mutual Confidentiality Agreement ("MCA") that the parties executed.

9.　Importantly, the oral agreement and MCA prohibited Marquis from selling or attempting to sell its products to AMA's customers for a period of one year after AMA's last single purchase of more than $100,000 of Marquis' products.　The agreements further required that Marquis refrain from selling, soliciting or contacting to do business, directly or indirectly, with thirteen specific sales agents whom AMA had cultivated and used for its business.

10.　Despite entering into the oral agreement and the MCA, and despite accepting more than a half million dollars' worth of business from AMA, Marquis solicited on its website the product at prices far more favorable than the prices AMA could offer.　AMA's customers and sales agents saw this solicitation on the internet, causing AMA the loss of at least one major customer that had agreed to purchase more than $2 million in product from AMA, as well as the considerable goodwill that AMA had enjoyed with that and other clients.

## The Parties

11.　Plaintiff AMA Systems, LLC, is a Maryland limited liability corporation with principal place of business at 8160 Lark Brown Road, Elkridge, Maryland.　All of the members of AMA are Maryland citizens.

12.　Defendant Marquis Extraction Technology LLC is an Illinois limited liability corporation with principal place of business at 11953 Prairie Industrial Parkway, Hennepin, Illinois.　Marquis is in the business of manufacturing products from ethanol including sanitizing

products.  On information and belief, members of Marquis Extraction Technology LLC are citizens of Illinois and none are citizens of Maryland.

13.     Defendant Marquis Inc. is an Illinois corporation with principal place of business at 11953 Prairie Industrial Parkway, Hennepin, Illinois.  Marquis is a merchant in the business of manufacturing products from ethanol including sanitizing products.  Upon information and belief Marquis Inc. and Marquis Extraction Technology LLC are affiliated partners that act jointly in that Marquis Extraction Technology LLC accepts purchase orders and invoices for which Marquis Inc. accepts and processes payment.

## Jurisdiction and Venue

14.     The Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C §1332 because all Plaintiffs and all Defendants are citizens of different states and because the amount in controversy exceeds $75,000.

15.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because (1) the two Defendants reside in this District, and (2) a substantial part of the events or omissions giving rise to this claim occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### AMA Serves a Unique Customer Base, Which It has Developed Over Years of Business.

16.     AMA is one of the largest special market distributors in the USA.  It sources and purchases a wide variety of products from manufacturers and other distributors around the world for what it calls its "special markets."  AMA's special markets, which AMA has developed with its skill, experience and expertise, and at its expense, include among other things: incentive, premium, motivation and safety programs, the QVC television network, and other business-to-business distribution and trade.

17.     In developing and serving its unique customer base, AMA has established relationships with hundreds of manufacturers and suppliers of some of the most well-known brands in the world.

18.     In its business, AMA has acquired an expertise in finding, supplying and distributing a wide variety of products to satisfy its customers' needs.

19.     AMA does not manufacture the items it supplies to its unique customer base.  It purchases the products from suppliers and manufacturers such as Marquis and resells them to its unique customer base that it has developed over time using its expertise and skill.

**AMA and Marquis Enter into a Contract for the Supply of Hand Sanitizer.**

20.     When the COVID-19 pandemic crisis hit, AMA was uniquely situated to work with manufacturers and its customers to supply pandemic-related products in an expedient, efficient, and economical manner.  For example, AMA sourced large quantities of personal protection equipment, such as KN-95 face masks and other personal protection equipment, for sale and distribution to businesses in America.

21.     In or around late March and early April of 2020, AMA searched for a manufacturer to supply hand sanitizer and began discussions with Marquis.

22.     Sanitizer was a new line for Marquis, and Marquis stated that AMA and Marquis would not be competitors as Marquis was interested in selling its products in large quantities through distributors like AMA rather than selling to retail, end-user and down-stream customers and resellers.

23.     Early on in these discussions, the parties negotiated for AMA to be Marquis' global exclusive supplier for all of Marquis' gel and liquid hand sanitizer.  AMA would be non-exclusive on all "totes and tankers" of ethanol but if AMA brought Marquis the account and Marquis had

never sold to the account before, AMA would be protected against Marquis selling to them directly or indirectly.

24.     Based on these discussions and Marquis' representations, AMA began to build its sales team to promote Marquis' products.

25.     After several weeks, Marquis decided that it did not want to do an exclusive agreement.

26.     The parties agreed that AMA would come up with its own brand called 2ProtekU, to be manufactured by Marquis, so that their respective marketing efforts did not overlap.

27.     Based upon its experience in the industry, AMA was concerned that its clients would try to cut out AMA and deal directly with Marquis and/or that Marquis would try to cut AMA out of the deal by dealing directly with AMA's customers, agents, and business partners.

28.     During all conversations between AMA and Marquis, the parties agreed that AMA would be protected against Marquis selling to any of AMA's customers, agents, or business partners or anyone else AMA brought to Marquis for resale purposes.

29.     In an attempt to acknowledge this concern, and in an attempt to memorialize the parties' mutual understanding, Marquis sent AMA a Letter of Intent ("LOI") dated April 28, 2020.

30.     In part, the LOI stated as follows:

"As to any customer of AMA that is not already a customer of Marquis at the time it first purchases Marquis' products from AMA ("AMA Customer"), Marquis agrees that it will not sell or attempt to sell its products to such AMA Customer for a period of one (1) year after such AMA Customer's last purchase of more than $100,000 Marquis' products from Company."

31.     AMA did not execute the LOI because it did not include language relating to the oral agreement the parties had already entered that protected AMA against Marquis selling to any

of AMA's customers, agents, or business partners or anyone else AMA brought to Marquis for resale purposes.

32.    In April of 2020, and before the draft LOI was provided to AMA, and because of the urgent demand for sanitizer around the country at the time, the parties entered into a contract pursuant to which Marquis agreed to supply AMA with variously sized bottles of hand sanitizer for resale and redistribution.

33.    Specifically, on April 22, 2020, AMA issued from its offices in Elkridge, Maryland to Marquis's offices in Hennepin, Illinois a written purchase order requesting that Marquis manufacture and supply specific quantities of various sized bottles of hand sanitizer liquid and gel in the amount of $570,173.  The written purchase orders and written invoices for the transactions in this case were between Marquis Extraction Technology LLC and AMA, whereas payment was made by wire transfer from AMA to Marquis, Inc.

34.    Marquis would then manufacture the requested hand sanitizer in its Hennepin, Illinois facility for pick up at Marquis's facility.

35.    Along with fulfillment of AMA's order, Marquis delivered an invoice from its offices in Hennepin, Illinois to AMA at its offices in Maryland. The invoice included wiring instructions for payment via wire transfer.

36.    On or about April 22, 2020, AMA made payment of the Marquis invoice via wire transfer, as instructed.

37.    Pursuant to the parties' contract, Marquis understood that its product would have to be of a merchantable quality.

## Marquis Manufactures and Supplies Unmarketable Products and Fails to Compensate AMA for the Agreed Upon Returned and Returnable Product.

38.     When AMA received the large quantity of hand sanitizing liquid and gel from Marquis, AMA soon found that it could not resell the product and that it was being rejected by AMA's market.

39.     AMA's customers complained that the product was objectionable because the smell was extremely noxious and unappealing, the viscosity was too thin and watery, and the bottle's shape (akin to a sport water bottle) could cause dangerous confusion with the purchasers.

40.     When AMA complained to Marquis, Marquis agreed to accept return of the liquid in sports bottles for a full refund.  Marquis's only request was that AMA return the product in two stages due to storage space concerns.  Pursuant to this agreement, AMA returned a bit more than half of the product.  Marquis further promised to accept the remainder of the product once storage space opened.

41.     Marquis, however, reneged on its promise in two respects.  Though it accepted return of the first shipment of unsuitable product, worth approximately $214,500, it has not returned any money to AMA.  And, it has refused to accept any of the additional unusable product.

42.     Marquis has acknowledged the debt, and it has given AMA an offset of about $30,000 on other product that AMA had purchased from Marquis.  Other than this credit, Marquis has paid nothing to AMA.

43.     Though AMA has attempted the resell the hand sanitizing liquid and gel that was not in sports bottles, it is unable to do so without objection due to the odor and viscosity issued. The remaining liquid and gel sit in AMA warehouses, unmarketable, and unmerchantable.

44.     Later, Marquis did make certain improvements to the product, and promised to make more improvements, so that it did not have quite as objectionable odor as the initial product.

This "improved" product was the subject of other efforts between Marquis and AMA and are not part of this lawsuit.

## AMA and Marquis Enter into an Oral and Written Contract to Protect the Parties' Respective Confidential Information.

45.     As stated, in or around April of 2020, due to Marquis changing its position regarding entering into an exclusive agreement with AMA, AMA determined that it would create a separate brand of hand sanitizing liquid, named 2ProtekU.  Separate from its purchase order, AMA began speaking to Marquis about this prospect.

46.     Recognizing that AMA's connections with its various customers, employees, contractors, agents and business partners constituted a valuable proprietary information and business information, the parties orally agreed that Marquis would not sell or attempt to sell to, solicit, or do business with, either directly or indirectly, any of AMA's customers, agents or business partners or any party AMA brought to Marquis for resale purposes.

47.     On June 3, 2020, when AMA expressed concern that it had received an email from one of its agents that he and another or AMA's agents were advising Marquis directly on a deal, Marquis responded that "there is zero percent chance of me selling directly to them.  Everything will be through AMA.  * * * The same is true for all other potential partners…if there is a potential deal out there with one of your partners, I think we all agree that you and your team should be involved from the beginning."

48.     Upon information and belief, AMA believes this representation to be false as Marquis was already trying to sell directly to AMA's customers or agents and therefore was in breach of its obligation pursuant to the parties oral agreement that Marquis would honor and protect AMA's valuable relationships with its customers, business partners and agents.

49.     Ultimately, the parties drafted and executed a Mutual Confidentiality Agreement ("MCA"), the purpose of which was to memorialize their prior oral agreement to protect and preserve confidential and/or proprietary information and materials that might be disclosed or made available by one party to the other party and to protect AMA's valuable relationships with its customers, business partners and agents.

50.     The MCA memorialized the parties' prior oral agreement that Marquis would not (a) sell or attempt to sell its products to any of AMA's customers for a period of one year after AMA's last single purchase of more than $100,000 of Marquis products; or (b) divert or attempt to divert any customers, employees or contractors for a period of a year after disclosure of information.

51.     The MCA also contained a list of agents and business partners of AMA to which Marquis had previously agreed that it would "not sell, solicit, contact or do business with, directly or indirectly" for two years.

**Marquis Violates the Prior Oral Agreement and Subsequent Mutual Confidentiality Agreement and AMA Loses More Than Two Million Dollars in Business**

52.     On or about May 21, 2020, AMA received a purchase order for hand sanitizer from one of its representatives/agents who supplies products for NASCAR and Costco membership warehouse stores.  The purchase order was for 126,336 sixteen-ounce bottles and 123,560 one-gallon bottles of hand sanitizer in the amount of $2,138,321.68.

53.     Around this time, Marquis, having knowledge of the price that it sold sanitizer to AMA , advertised hand sanitizer for sale on its website at a price that was lower than AMA could offer due to the price AMA purchased its sanitizer from Marquis.

54.     On or before May 26, 2020, AMA's business contacts for NASCAR and Costco saw on the Marquis website that it was selling hand sanitizer at prices that were lower or than the prices they were selling to AMA and its customers.

55.     In violation of its agreement with AMA, and contrary to AMA's instructions, Marquis dealt directly with AMA's customers and agents.

56.     As a result of Marquis' unauthorized contact in violation of the agreements, AMA lost the deal worth more than $2 million and has suffered lost goodwill and future business with these customers.

## COUNT I
### (Breach of Contract)

57.     AMA realleges and incorporates by references into this Count I each and every allegation contained in the prior paragraphs as if set forth in full here.

58.     In or about April 2020, AMA entered into a contract with Marquis pursuant to which Marquis would supply AMA with quantities of hand sanitizer liquid and gel.

59.     The contract was supported by adequate consideration, performed by AMA in that AMA made full payment but received unsuitable and unsellable product in return. AMA complied with all of its obligations under the agreement.

60.     Marquis committed breaches of the parties' contract in one or more of the following respects:

      a.     Marquis failed to manufacture and supply hand sanitizer without a noxious odor;

      b.     Marquis failed to manufacture and supply hand sanitizer with an adequate viscosity;

c.      Marquis failed to manufacture and supply hand sanitizer in a bottle that would not be confused with a bottle for drinking liquid;

d.      Marquis failed to manufacture and supply hand sanitizer in a reasonably safe bottle;

e.      Marquis failed to manufacture and supply hand sanitizer that conformed to AMA's stated needs and uses;

f.      Marquis failed to manufacture and supply hand sanitizer in a manner that was reasonably safe for users;

61.    As a direct and proximate result of Marquis's breach of the parties' contract, AMA has been forced to warehouse large quantities of hand sanitizer, has an unsalable product and has suffered damages in excess of $75,000, including but not limited to product costs, freight and warehousing costs, storage costs, loss of profits, market and goodwill, and other costs and expenses.

**WHEREFORE**, AMA respectfully requests that the Court enter judgment in its favor and against Marquis, and enter an Order:

A.      awarding AMA compensatory damages to be proven at trial;

B.      awarding AMA exemplary damages for Marquis's intentional, deliberate and willful conduct;

C.      awarding AMA its expenses incurred as a result of Marquis's actions, including attorneys' fees, expenses and costs in bringing this action; and

D.      granting such other and further relief as the Court deems equitable and just.

## COUNT II
### (Breach of Oral Contract)

62.     AMA realleges and incorporates by references into this Count II each and every allegation contained in the prior paragraphs as if set forth in full here.

63.     In or about April or May 2020, AMA entered into an oral agreement with Marquis pursuant to which Marquis would accept return of all the hand sanitizer produced in sports bottles and provide a complete refund.  The parties agreed that AMA would return approximately half of the sports bottles and store the remainder until Marquis had storage capacity to accept the remainder.

64.     This oral agreement was supported by adequate consideration, performed by AMA in that AMA returned approximately half of the bottles and stored the remainder of the bottles, all of which AMA had previously paid Marquis for, at its cost and in reliance on Marquis's promise that it would accept return of the rest of the hand sanitizer produced in sports bottles once Marquis had storage capacity.

65.     Marquis committed breaches of the parties' oral contract in one or more of the following respects:

      a.     Marquis agreed to accept return of the hand sanitizer liquid in sports water bottled for a full refund and failed to pay for the product returned; or

      b.     Marquis agreed to accept return of the hand sanitizer liquid in sports water bottled for a full refund and failed to accept all of the product and pay for the unsatisfactory product.

66.     As a direct and proximate result of Marquis's breach of the parties' oral contract, AMA has been forced to warehouse large quantities of hand sanitizer, has not received a refund for returned and unreturned unusable hand sanitizer and has suffered damages in excess of

$75,000, including but not limited to product costs, freight and warehousing costs, storage costs, and other costs and expenses.

**WHEREFORE**, AMA respectfully requests that the Court enter judgment in its favor and against Marquis, and enter an Order:

      A.    awarding AMA compensatory damages to be proven at trial;

      B.    awarding AMA exemplary damages for Marquis's intentional, deliberate and willful conduct;

      C.    awarding AMA its expenses incurred as a result of Marquis's actions, including attorneys' fees, expenses and costs in bringing this action; and

      D.    granting such other and further relief as the Court deems equitable and just.

<u>**COUNT III**</u>
**(Breach of Implied Warranty of Merchantability – Common Law)**

67.    AMA realleges and incorporates by references into this Count III each and every allegation contained in the prior paragraphs as if set forth in full here.

68.    In or about April 2020, AMA entered into a contract with Marquis pursuant to which Marquis would supply AMA with quantities of hand sanitizer liquid and gel.

69.    The contract concerned a transaction in goods.

70.    Marquis is a merchant of sanitizing products such as hand sanitizer liquid and gel.

71.    As part of the parties' contract, Marquis impliedly warranted with merchantability of the hand sanitizer it manufactured and supplied to AMA.

72.    Marquis committed breaches of the implied warranty of merchantability in one or more of the following respects:

a.    Marquis failed to manufacture and supply hand sanitizer that was not defective and not without objection in the trade in that it did not comply with the odor requirements of reasonable customers who use hand sanitizer;

b.    Marquis failed to manufacture and supply hand sanitizer that was not defective and not without objection in the trade in that it did not comply with the viscosity requirements of reasonable customers who use hand sanitizer because the viscosity of Marquis's product was too thin and ran like water;

c.    Marquis failed to manufacture and supply hand sanitizer that was not defective and not without objection in the trade in that it did not comply with the safety requirements of reasonable customers who use hand sanitizer because the shape of Marquis's bottle was too similar to that of a sports drinking water bottle and posed an unreasonable danger of confusion;

d.    Marquis failed to manufacture hand sanitizer of a fair average quality;

e.    Marquis failed to manufacture hand sanitizer that was fit for the ordinary purposes for which it was used; or

f.    Marquis failed to manufacture hand sanitizer that complied with its implied warranty of merchantability.

73.    As a direct and proximate result of Marquis's breach of the implied warranty of merchantability, AMA suffered damages in excess of $75,000, including but not limited to product costs, freight and warehousing costs, storage costs, loss of profits, market and goodwill, and other costs and expenses.

**WHEREFORE**, AMA respectfully requests that the Court enter judgment in its favor and against Marquis, and enter an Order:

A.    awarding AMA compensatory damages to be proven at trial;

B.    awarding AMA exemplary damages for Marquis's intentional, deliberate and willful conduct;

C.    awarding AMA its expenses incurred as a result of Marquis's actions, including attorneys' fees, expenses and costs in bringing this action; and

D.    granting such other and further relief as the Court deems equitable and just.

## COUNT IV
### (Breach of Implied Warranty of Fitness for a Particular Purpose – Common Law)

74.    AMA realleges and incorporates by references into this Count IV each and every allegation contained in the prior paragraphs as if set forth in full here.

75.    In or about April 2020, AMA entered into a contract with Marquis pursuant to which Marquis would supply AMA with quantities of hand sanitizer liquid and gel.

76.    The contract concerned a transaction in goods.

77.    At the time the parties entered into the contract, Marquis knew or reasonably should have known of the particular purpose for which the hand sanitizer liquid and gel were required.

78.    At the time the parties entered into the contract, Marquis knew or reasonably should have known that AMA was relying on Marquis's skill or judgment to furnish suitable good.

79.    As part of the parts' contract, Marquis impliedly warranted the fitness for a particular purpose of the hand sanitizer it manufactured for AMA.

80.    Marquis committed breaches of the implied warranty of fitness for a particular purpose in one or more of the following respects:

a.    Marquis failed to manufacture and supply hand sanitizer that complied with the odor requirements of reasonable customers who use hand sanitizer because the odor of Marquis's product was unreasonably noxious and unappealing;

b.    Marquis failed to manufacture and supply hand sanitizer that complied with the viscosity requirements of reasonable customers who use hand sanitizer because the Marquis's product was too thin and ran like water;

c.    Marquis failed to manufacture and supply hand sanitizer that complied with the safety requirements of reasonable customers who use hand sanitizer because the shape of Marquis's bottle was too similar to that of a drinking water bottle and posed an unreasonable danger of confusion;

d.    Marquis failed to manufacture hand sanitizer of a fair average quality;

e.    Marquis failed to manufacture hand sanitizer that was fit for the ordinary purposes for which it was used; or

f.    Marquis failed to manufacture hand sanitizer that complied with its implied warranty of merchantability.

81.    As a direct and proximate result of Marquis's breach of the implied warranty of fitness for a particular purpose, AMA has been forced to warehouse large quantities of hand sanitizer, has not received refund for returned and unreturned unusable hand sanitizer and has suffered damages in excess of $75,000, including but not limited to product costs, freight and warehousing costs, storage costs, loss of profits, market and goodwill, and other costs and expenses.

**WHEREFORE**, AMA respectfully requests that the Court enter judgment in its favor and against Marquis, and enter an Order:

A.     awarding AMA compensatory damages to be proven at trial;

B.     awarding AMA exemplary damages for Marquis's intentional, deliberate and willful conduct;

C.     awarding AMA its expenses incurred as a result of Marquis's actions, including attorneys' fees, expenses and costs in bringing this action; and

D.     granting such other and further relief as the Court deems equitable and just.

## COUNT V
### (Breach of Implied Warranty of Merchantability – Uniform Commercial Code)

82.     AMA realleges and incorporates by references into this Count V each and every allegation contained in the prior paragraphs as if set forth in full here.

83.     In or about April 2020, AMA entered into a contract with Marquis pursuant to which Marquis would supply AMA with quantities of hand sanitizer liquid and gel.

84.     The contact concerned a transaction in goods pursuant to 810 ILCS 5/2-102.

85.     As part of the parties' contract, Marquis impliedly warranted with merchantability of the hand sanitizer it manufactured and supplied to AMA pursuant to 810 ILCS 5/2-314.

86.     At all times relevant, there existed a statute in the State of Illinois, codified at 810 ILCS 5/2-314, which provides as follows:

Sec. 2-314. Implied warranty: merchantability; usage of trade.

    (1)    Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this Section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

    (2)    Goods to be merchantable must be at least such as

        (a)    pass without objection in the trade under the contract description; and

(b)    in the case of fungible goods, are of fair average quality within the description; and

(c)    are fit for the ordinary purposes for which such goods are used; and

(d)    run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e)    are adequately contained, packaged, and labeled as the agreement may require; and

(f)    conform to the promises or affirmations of fact made on the container or label if any.

(3)    Unless excluded or modified (Section 2-316) other implied warranties may arise from course of dealing or usage of trade.

87.    Marquis is a merchant of sanitizing products such as hand sanitizer liquid and gel.

88.    Marquis committed breaches of the implied warranty of merchantability provided for in 810 ILCS 5/2-314 in one or more of the following respects:

a.    Marquis failed to manufacture and supply hand sanitizer that was not defective and not without objection in the trade in that it did not comply with the odor requirements of reasonable customers who use hand sanitizer;

b.    Marquis failed to manufacture and supply hand sanitizer that was not defective and not without objection in the trade in that it did not comply with the viscosity requirements of reasonable customers who use hand sanitizer because Marquis's product was too thin and ran like water;

c.    Marquis failed to manufacture and supply hand sanitizer that was not defective and not without objection in the trade in that it did not comply with the safety requirements of reasonable customers who use hand sanitizer because the shape of Marquis's bottle was too similar to that of a sports drinking water bottle and posed an unreasonable danger of confusion;

d.      Marquis failed to manufacture and supply hand sanitizer in a bottle that would not be confused with a bottle for drinking liquid;

e.      Marquis failed to manufacture hand sanitizer of a fair average quality;

f.      Marquis failed to manufacture hand sanitizer that was fit for the ordinary purposes for which it was used; or

g.      Marquis failed to manufacture hand sanitizer that complied with its implied warranty of merchantability.

89.     As a direct and proximate result of Marquis's breach of the implied warranty of merchantability provided for in 810 ILCS 5/2-314, AMA has been forced to warehouse large quantities of hand sanitizer, has not received refund for returned and unreturned unusable hand sanitizer and has suffered damages in excess of $75,000, including but not limited to product costs, freight and warehousing costs, storage costs, loss of profits, market and goodwill, and other costs and expenses.

**WHEREFORE**, AMA respectfully requests that the Court enter judgment in its favor and against Marquis, and enter an Order:

A.      awarding AMA compensatory damages to be proven at trial;

B.      awarding AMA exemplary damages for Marquis's intentional, deliberate and willful conduct;

C.      awarding AMA its expenses incurred as a result of Marquis's actions, including attorneys' fees, expenses and costs in bringing this action; and

D.      granting such other and further relief as the Court deems equitable and just.

<u>**COUNT VI**</u>
**(Breach of Implied Warranty of Fitness for a Particular Purpose – Uniform Commercial Code)**

90.    AMA realleges and incorporates by references into this Count VI each and every allegation contained in the prior paragraphs as if set forth in full here.

91.    In or about April 2020, AMA entered into a contract with Marquis pursuant to which Marquis would supply AMA with quantities of hand sanitizer liquid and gel.

92.    The contract concerned a transaction in goods pursuant to 810 ILCS 5/2-102.

93.    At the time the parties entered into the contract, Marquis knew or reasonably should have known of the particular purpose for which the hand sanitizer liquid and gel were required.

94.    At the time the parties entered into the contract, Marquis knew or reasonably should have known that AMA was relying on Marquis's skill or judgment to furnish suitable good.

95.    As part of the parts' contract, Marquis impliedly warranted the fitness for a particular purpose of the hand sanitizer it manufactured for AMA pursuant to 810 ILCS 5/2-315.

96.    At all times relevant, there existed a statute in the State of Illinois, codified at 810 ILCS 5/2-315, which provides as follows:

Sec. 2-315. Implied warranty: fitness for particular purpose.

>    Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

97.    Marquis committed breaches of the implied warranty of fitness for a particular purpose provided for in 810 ILCS 5/2-315 in one or more of the following respects:

a.    Marquis failed to manufacture and supply hand sanitizer that complied with the odor requirements of reasonable customers who use hand sanitizer because the odor of Marquis's product was unreasonably noxious and unappealing;

b.    Marquis failed to manufacture and supply hand sanitizer that complied with the viscosity requirements of reasonable customers who use hand sanitizer because Marquis's product was too thin and ran like water;

c.    Marquis failed to manufacture and supply hand sanitizer that complied with the safety requirements of reasonable customers who use hand sanitizer because the shape of Marquis's bottle was too similar to that of a drinking water bottle and posed an unreasonable danger of confusion;

d.    Marquis failed to manufacture hand sanitizer of a fair average quality;

e.    Marquis failed to manufacture hand sanitizer that was fit for the ordinary purposes for which it was used; or

f.    Marquis failed to manufacture hand sanitizer that complied with its implied warranty of merchantability.

98.    As a direct and proximate result of Marquis's breach of the implied warranty of fitness for a particular purpose provided for in 810 ILCS 5/2-315, AMA has been forced to warehouse large quantities of hand sanitizer, has not received refund for returned and unreturned unusable hand sanitizer and has suffered damages in excess of $75,000, including but not limited to product costs, freight and warehousing costs, storage costs, loss of profits, market and goodwill, and other costs and expenses.

**WHEREFORE**, AMA respectfully requests that the Court enter judgment in its favor and against Marquis, and enter an Order:

A.   awarding AMA compensatory damages to be proven at trial;

B.   awarding AMA exemplary damages for Marquis's intentional, deliberate and willful conduct;

C.   awarding AMA its expenses incurred as a result of Marquis's actions, including attorneys' fees, expenses and costs in bringing this action; and

D.   granting such other and further relief as the Court deems equitable and just.

## COUNT VII
### (Breach of Contract)

99.   AMA realleges and incorporates by references into this Count VII each and every allegation contained in the prior paragraphs as if set forth in full here.

100.   In or about April 2020, AMA entered into a valid and enforceable agreement with Marquis pursuant to which Marquis agreed that it would not (a) sell or attempt to sell its products to any of AMA's customers for a period of one year after AMA's customer's last single purchase of more than $100,000 of Marquis products; or divert or attempt to divert any customers, employees or contractors for a period of a year after disclosure of information.

101.   Additionally, the parties agreed to a list of agents and business partners of AMA to which Marquis would "not sell, solicit contact or do business with, directly or indirectly."

102.   Marquis committed breaches of the parties' contract in one or more of the following respects:

a.   Knowing what Marquis sold hand sanitizer liquid and gel to AMA for, Marquis publicly solicited for customers, including customers of AMA, in the market for hand sanitizer liquid and gel offering terms to AMA's customers that were more favorable than those AMA could provide; or

b.      Marquis did business related to the sale of hand sanitizer liquid and gel directly or indirectly with customers of AMA and known agents for potential customers of AMA..

103.    As a direct and proximate result of Marquis's breach of the parties' contract, AMA has suffered damages in excess of $75,000, including but not limited to lost sales, lost revenues, lost customers, loss of market share, loss profits, loss of goodwill, and other costs and expenses.

**WHEREFORE**, AMA respectfully requests that the Court enter judgment in its favor and against Marquis, and enter an Order:

A.      awarding AMA compensatory damages to be proven at trial;

B.      awarding AMA exemplary damages for Marquis's intentional, deliberate and willful conduct;

C.      awarding AMA its expenses incurred as a result of Marquis's actions, including attorneys' fees, expenses and costs in bringing this action; and

D.      granting such other and further relief as the Court deems equitable and just.

<u>**COUNT VIII**</u>
**(Tortious Interference with Prospective Business Relations)**

104.    AMA realleges and incorporates by references into this Count VIII each and every allegation contained in the prior paragraphs as if set forth in full here.

105.    At all times relevant AMA has held reasonable expectations of entering into valid business relationships and contracts with its established customers and agents.

106.    Marquis has knowledge of this expectation and knew of AMA's established customers and agents because they had been discussed with Marquis since at least as early as April 23, 2020 as later memorialized in the Mutual Confidentiality Agreement executed by the parties.

107.    Marquis intentionally and purposefully interfered with AMA's legitimate expectations and prevented them from ripening when it solicited directly and indirectly, and in breach of the oral agreement as later memorialized in the Mutual Confidentiality Agreement, business from AMA's established customers and agents.

108.    Marquis' undercutting of AMA's prices in an attempt to sell to AMA's customers and agents, Marquis' misuse of AMA's protected information, and AMA's continuation of its attempts to sell product to AMA's customers and agents even though it had knowledge that they were AMA's customers and agents was intentional, unjustified and malicious.

109.    As a direct and proximate result of Marquis's tortious interference, AMA has suffered damages in excess of $75,000, including but not limited to lost sales, lost revenues, lost customers, loss of market share, loss of goodwill, and other costs and expenses.

**WHEREFORE**, AMA respectfully requests that the Court enter judgment in its favor and against Marquis, and enter an Order:

A.    awarding AMA compensatory damages to be proven at trial;

B.    awarding AMA exemplary damages for Marquis's intentional, deliberate and willful conduct;

C.    awarding AMA its expenses incurred as a result of Marquis's actions, including attorneys' fees, expenses and costs in bringing this action; and

D.    granting such other and further relief as the Court deems equitable and just.

<u>**COUNT IX**</u>
**(Tortious Interference with Contract)**

110.    AMA realleges and incorporates by references into this Count IX each and every allegation contained in the prior paragraphs as if set forth in full here.

111.    AMA held a valid and enforceable contract with two of its established agents for sales of hand sanitizer, the value of which was $2,138,321.68.

112.    Marquis knew of AMA's valid and enforceable contract with two of AMA's established agents for sales of hand sanitizer, the value of which was $2,138,321.68.

113.    Marquis intentionally and unjustifiable interfered with AMA's contract and induced the other party to violate the contract when Marquis directly and indirectly, and in breach of its oral agreement as later memorialized in the Mutual Confidentiality Agreement, solicited hand sanitizer sales from and agreed to sell to AMA's established agents for amounts less than AMA had agreed to sell the hand sanitizer.

114.    Marquis' conduct was unjustified and malicious.

115.    As a direct and proximate result of Marquis's tortious interference, AMA has suffered damages in excess of $2,138.321.68, including but not limited to lost sales, lost revenues, lost customers, loss of market share, loss of profits, loss of goodwill, and other costs and expenses.

**WHEREFORE**, AMA respectfully requests that the Court enter judgment in its favor and against Marquis, and enter an Order:

A.    awarding AMA compensatory damages to be proven at trial;

B.    awarding AMA exemplary damages for Marquis's intentional, deliberate and willful conduct;

C.    awarding AMA its expenses incurred as a result of Marquis's actions, including attorneys' fees, expenses and costs in bringing this action; and

D.    granting such other and further relief as the Court deems equitable and just.

## COUNT X
### (Tortious Interference with Contract)

116.    AMA realleges and incorporates by references into this Count X each and every allegation contained in the prior paragraphs as if set forth in full here.

117.    AMA held valid and enforceable contracts with two of its established agents that prohibited those agents from interfering, circumventing or attempting to circumvent, by-pass, or obviate AMA's interest or relationship with its dealers, manufacturers (such as Marquis) and other parties.

118.    Marquis was aware of these valid and enforceable contracts AMA had with its agents.

119.    Marquis intentionally and unjustifiably interfered with AMA's contracts and induced the agents to violate the contracts when Marquis directly and indirectly solicited hand sanitizer sales from and agreed to sell to AMA's established agents and circumventing and bypassing AMA in breach of those agents' contracts with AMA.

120.    Marquis' wrongful conduct caused the agents to violate their contract with AMA and deal with Marquis directly in an attempt to circumvent and bypass AMA in breach of the agents' contracts with AMA.

121.    As a direct and proximate result of Marquis's tortious interference with AMA's contracts with its agents, AMA has suffered damages in excess of $2,138.321.68, including but not limited to lost sales, lost revenues, lost customers, loss of market share, loss of profits, loss of goodwill, and other costs and expenses.

**WHEREFORE**, AMA respectfully requests that the Court enter judgment in its favor and against Marquis, and enter an Order:

A.    awarding AMA compensatory damages to be proven at trial;

B.      awarding AMA exemplary damages for Marquis's intentional, deliberate and willful conduct;

C.      awarding AMA its expenses incurred as a result of Marquis's actions, including attorneys' fees, expenses and costs in bringing this action; and

D.      granting such other and further relief as the Court deems equitable and just.

## COUNT XI
### (Fraudulent Misrepresentation)

122.    AMA realleges and incorporates by references into this Count XI each and every allegation contained in the prior paragraphs as if set forth in full here.

123.    Garet Dinges ("Dinges"), Marquis' Product Sales Manager, conducted all negotiations with AMA on behalf of Marquis.

124.    During discussions in March and April of 2020, but no later than April 22, 2020, Dinges, in his capacity as Product Sales Manager made a false statement of material fact when Dinges stated that Marquis was not a competitor of AMA and was only interested in selling its products in large quantities through distributors like AMA rather than selling to retail, end-user and down-stream customers and resellers.

125.    During discussions in March and April of 2020, but no later than April 22, 2020,Dinges made an additional false statement of material fact when he stated that Marquis and AMA were partners rather than competitors.

126.    On or about April 23, 2020, Dinges made yet another false statement of material fact when he stated that AMA would not sell, solicit, or contract directly or indirectly with any of AMA's agents, customers, or representatives.

127.    Dinges and Marquis knew these statements to be false at the time they were made them and Dinges made them to intentionally mislead AMA.

128.    Dinges and Marquis intended AMA to act upon these statements.  Specifically, Dinges and Marquis intended that AMA enter into a business relationship with Marquis it would not otherwise have entered into and to give Marquis access to AMA's agents, customers, business partners and representatives Marquis would not otherwise have been given.

129.    AMA justifiably relied on these statements and entered into a business relationship with Marquis and allowed Marquis limited direct contact with AMA's agents, customers, and business partners.

130.    AMA suffered damages when Marquis, in contradiction to its misrepresentations, attempted to compete with AMA and bypass AMA to do business directly with AMA's customers, business partners, and agents resulting in a loss of a more than $2 million purchase order as well as the considerable goodwill that AMA had enjoyed with that and other clients.

131.    As a direct and proximate result of Dinges' and Marquis' fraudulent misrepresentations, AMA has suffered damages in excess of $2,138.321.68, including but not limited to lost sales, lost revenues, lost customers, loss of market share, loss of profits, loss of goodwill, and other costs and expenses.

**WHEREFORE**, AMA respectfully requests that the Court enter judgment in its favor and against Marquis, and enter an Order:

    A.  awarding AMA compensatory damages to be proven at trial;

    B.  awarding AMA exemplary damages for Marquis's intentional, deliberate and willful conduct;

C.  awarding AMA its expenses incurred as a result of Marquis's actions, including attorneys' fees, expenses and costs in bringing this action; and

D.  granting such other and further relief as the Court deems equitable and just.

## COUNT XII
### (Promissory Estoppel (In Alternative to Breach of Contract))

132.    In or about April 2020, and prior to AMA agreeing to purchase any sanitizer or other products from Marquis, Marquis made an unambiguous promise that it would not sell, solicit, or contract directly or indirectly with any of AMA's agents, customers, or representatives.

133.    Marquis unambiguously promised AMA that Marquis and AMA would not be competitors but would instead be partners and that Marquis would not do business or attempt to do business directly or indirectly with AMA's customers, business partners and agents but would instead protect AMA's customer and business partner relationships.

134.    AMA would not have done business with Marquis without these promises.

135.    AMA relied on these promises in agreeing to do business with Marquis and allowing its business partners, agents, and representatives to communicate directly with Marquis on a limited, invited basis.

136.    AMA's reliance was expected and foreseeable by Marquis.

137.    AMA relied on Marquis' promises that AMA and Marquis would not be competitors and that Marquis would not do business or attempt to do business directly or indirectly with AMA's customers, business partners and agents but would instead protect AMA's customer and business partner relationships to AMA's detriment by allowing its agents and representatives to be involved in communications with Marquis.  Then, in directly contradiction to its promises, Marquis attempted to deal directly with AMA's agents, customers, and businesses partners, and

AMA was told by said agents and representatives that they were dealing with Marquis directly on their deals and did not need AMA.

138.    As a direct and proximate result of AMA's reliance on Marquis' promises, AMA has suffered damages in excess of $75,000, including but not limited to lost sales, lost revenues, lost customers, loss of market share, loss of profits, loss of goodwill, and other costs and expenses.

**WHEREFORE**, AMA respectfully requests that the Court enter judgment in its favor and against Marquis, and enter an Order:

A.    awarding AMA compensatory damages to be proven at trial;

B.    awarding AMA exemplary damages for Marquis's intentional, deliberate and willful conduct;

C.    awarding AMA its expenses incurred as a result of Marquis's actions, including attorneys' fees, expenses and costs in bringing this action; and

D.    granting such other and further relief as the Court deems equitable and just.

<u>**COUNT XIII**</u>
**(Unjust Enrichment (Plead in the Alternative to Count II's Breach of Contract))**

139.    In the alternative, even if there is no enforceable contractual as alleged Count II, Marquis is liable to Plaintiff under the doctrine of unjust enrichment.

140.    In or about April 2020, after discussions with Marquis regarding the $570,173 worth of unmarketable sanitizer that Marquis had provided to AMA, AMA returned $214,500 worth of sanitizer to Marquis based upon Marquis representation that Marquis would reimburse AMA amounts it previously paid to Marquis.

141.    AMA conferred a benefit on Marquis by returning $214,500.00 worth of sanitizer to Marquis for which it had previously paid Marquis.

142.　Marquis voluntarily accepted, unjustly retained, and appreciated the benefit of the sanitizer AMA provided to Marquis and has likewise unjustly retained AMA's money it previously paid to Marquis when AMA purchased the sanitizer.

143.　Thus, Marquis now has both AMA's money it paid for the sanitizer and the sanitizer itself.

144.　Marquis was enriched by AMA's return of the sanitizer and the money AMA paid to Marquis for the sanitizer.

145.　AMA has suffered an impoverishment by Marquis' failure to pay for that sanitizer that AMA returned to Marquis, which enriched Marquis.

146.　Marquis has credited AMA $30,000.00 for sanitizer which was returned but has not paid the remaining $184,500.00 to AMA.

147.　There is no justification for Marquis' failure to pay AMA the remaining $184,500.00 for AMA's return of the sanitizer.

148.　By refusing to pay AMA for the sanitizer returned to Marquis, Marquis has unjustly retained a benefit to the detriment of AMA in that Marquis is now in possession of both AMA's $184,500.00 and the sanitizer returned to and accepted by Marquis.

149.　Marquis' retention of that benefit violates the fundamental principles of justice, equity, and good conscious.

150.　To the extent that AMA's and Marquis' discussions regarding the return of the sanitizer did give rise to an enforceable contract, Marquis is liable to AMA for unjust enrichment.

151.　Plaintiff does not have an adequate remedy at law. (This is plead in the alternative to the allegations that a contract existed in Count II).

**WHEREFORE**, AMA respectfully requests the Court enter judgment in its favor and against Marquis, and enter an Order:

    A.  awarding AMA damages in the amount of $184,000.50, which is the value of the benefit improperly retained by Marquis;

    B.  awarding AMA its expenses incurred as a result of Marquis's actions, including attorneys fees, expenses and costs in bringing this action; and

    C.  granting such other and further relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff AMA Systems, LLC respectfully demands a trial by jury on all matters so triable.

Respectfully Submitted,

**AMA SYSTEMS, LLC, Plaintiff**

By:       /s/ David A. Herman (Lead Counsel)
             One of Its Attorneys

David A. Herman, IL Reg. No. 6211060
Matthew R. Trapp, IL Reg. No. 6284154
GIFFIN, WINNING, COHEN & BODEWES, P.C.
One West Old State Capitol Plaza
Suite 600 ~ Myers Building
Springfield, IL 62701
Phone: (217) 525-1571
Fax:    (217) 525-1710
dherman@giffinwinning.com
mtrapp@giffinwinning.com

Barry L. Gogel, MD Reg. No. 25495
RIFKIN WEINER LIVINGSTON, LLC
2002 Clipper Park Road
Suite 108
Baltimore, MD 21211

Phone: (410) 769-8080
Fax:    (410) 769-8811
bgogel@rwllaw.com
*Motion for Admission to Practice Pending*